BOARDMAN, Judge.
Willie A. Douglas appeals the revocation of his probation for his refusal to answer questions concerning a forged check. We reverse.
Appellant was originally charged with two counts of uttering a forged check and two counts of obtaining property in return for a worthless check. He pled guilty to the charges and was placed on concurrent five-year terms of probation in all four cases. One of the special conditions of his probation was that he cooperate with the authorities in bringing to justice the other persons involved in the scheme which had led to the charges brought against him.
Appellant was subsequently charged with violating his probation by refusing to completely and truthfully answer all questions put to him at the taking of his deposition for the Hillsborough County School Board on March 17, 1977, and at a school board hearing on March 22, 1977.
At the revocation hearing, Mr. Ronald K. Cacciatore, a special prosecutor for the school board, testified that on March 17, 1977, he subpoenaed appellant to get information concerning termination of an individual because of a forged check, but appellant did not cooperate fully. At the hearing before the school board on March 22, 1977, appellant invoked the Fifth Amendment, although he had not invoked it on March 17. After refreshing his recollection by reading appellant’s March 17 deposition, Cacciatore testified that appellant did cooperate fully on March 17 answering all of the questions asked on that date. When appellant invoked his Fifth Amendment privilege on March 22, it did not hinder the investigation, but it did hinder the proceeding be *12 cause Cacciatore was unable to prove his case. The only questions appellant refused to answer concerned a check involving Herbert H. Bowers.
Charles Tyree, the investigator for the school board in the case concerning the checks, testified that he had tried to contact appellant after appellant had been placed on probation, but was unable to do so. Pri- or to pleading guilty, appellant had talked to Tyree and had given him information concerning the case, but appellant would not cooperate afterwards. Tyree viewed his inability to contact appellant as a lack of cooperation on appellant’s part. However, Tyree knew where appellant worked during the entire period of investigation, having obtained this information through appellant’s probation supervisor. Another basis of Tyree’s assessment that appellant had not fully cooperated was that when he called appellant and asked him questions, appellant would say, “I have got to talk to my attorney,” and would not fully answer the questions. Appellant had not been charged in connection with the check about which Tyree was questioning him.
Appellant testified that he was employed by the city of Tampa as supervisor for the Ceta-Six Program. He was filing his monthly reports with his probation supervisor and was otherwise cooperating with his supervisor. He had met Tyree at the Red Lobster, at which time Tyree had said he expected appellant to cooperate on the Joe Reid case, and appellant replied that he would. Tyree knew where appellant worked and had gone there twice to speak to him. Appellant felt he had cooperated with Tyree. He had been a little late for a deposition once because of his job, but had called and told them he would be late. In the meantime Tyree and Cacciatore had come to his office and started yelling at him, telling him that if he did not cooperate they would have his probation revoked. He had truthfully answered all the questions asked of him on March 17 and cooperated fully. He was not represented by an attorney at the hearing on March 22, 1977. At that hearing he exercised his right to remain silent as to the two questions concerning the Bowers check because he thought Tyree and Cacciatore might be trying to use the questions to get his probation revoked.
Robert Sutton, appellant’s probation su-perviso” testified that he had supervised appellant for about one year, and appellant had presented no problems. He considered appellant to be a good probationer. Sutton could not give any direct testimony as to whether appellant had cooperated with the investigation of the school system, as Sutton had not been involved; he had not been present at the hearing nor had he been appellant’s probation supervisor at that time. Appellant was prompt in keeping in contact with him and submitting monthly reports. Sutton had received good reports from appellant’s employers. Cacciatore had indicated that appellant had not fully cooperated with the school board, and Sutton had drawn up the affidavit of probation violation upon the instructions of the trial judge.
At the' conclusion of the testimony, the trial judge found that appellant had violated his probation and revoked his probation, imposing prison terms of five years on each count. This appeal followed timely.
The apparent basis for the revocation of appellant’s probation was his assertion of his Fifth Amendment right not to incriminate himself when asked about the Bowers check at the hearing on March 22, 1977, since the testimony was uncontradicted that he had answered all the other questions asked of him at the hearing and all of the questions put to him on March 17, 1977. This case is controlled by State v. Heath, 343 So.2d 13 (Fla.1977), wherein our supreme court held that while a probationer, by accepting probation, waives his Fifth Amendment privilege with regard to his place of residence, his employment, his presence at a particular location at a particular time, explanation of his noncriminal conduct, and search of his person by his supervisor, “the . Fifth Amendment privilege against self-incrimination must be applicable to specific conduct and circumstances concerning a separate criminal offense.” *13 Id. at 16. The questions appellant refused to answer involved a separate criminal offense with which appellant, not having been convicted thereof and not having been granted immunity, could have been charged. He retained his right to refuse to answer such questions, and his probation could not be revoked for exercising this right.
Accordingly, the orders of revocation of appellant’s probationary terms and the judgments and sentences are REVERSED and the cause REMANDED with instructions to reinstate appellant’s probation in these cases.
GRIMES, C. J., and OTT, J., concur.